UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RICKY NOLAN,

Plaintiff,

v.

STEVEN B. WOLFSON, *et al.*,

Defendants.

Case No. 3:18-cv-00338-RCJ-WGC

**ORDER**

Before the court is Plaintiff's Application to Proceed in Forma Pauperis (IFP) (ECF No. 1) and pro se Complaint (ECF No. 1-1).

## **I. IFP APPLICATION**

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915 applies to all actions filed IFP, not just prisoner actions).

In addition, the Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"'[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty.'" *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quoting *Jefferson v. United States*, 277 F.2d 723, 725 (9th Cir. 1960)). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.,*

335 U.S. 331, 339 (1948).

> When a prisoner seeks to proceed without prepaying the filing fee:
> [I]n addition to filing the affidavit filed [as described above], [the prisoner] shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C. § 1915(a)(2). Notwithstanding the foregoing:

> (1) … [I]f a prisoner brings a civil action…[IFP], the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of --
> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint of notice of appeal.
> (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(1), (2).

Plaintiff's certified account statement indicates that his average monthly balance for the last six months was $0.64, and his average monthly deposits were $30.

Plaintiff's application to proceed IFP is granted. He is required to pay an initial partial filing fee in the amount of $6 (20 percent of $30). Thereafter, whenever his prison account exceeds $10, he is required to make monthly payments in the amount of twenty percent of the preceding month's income credited to his account until the $350 filing fee is paid.

## **II. SCREENING**

**A. Standard**

"The court shall dismiss the case at any time if the court determines that … the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). This provision applies to all actions filed IFP, whether or not the plaintiff is incarcerated. *See Lopez*, 203 F.3d at 1129; *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam).

In addition, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or office or employee of a governmental entity." 28 U.S.C. § 1915A(a). "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. Thus, when reviewing the adequacy of a complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) or 28 U.S.C. § 1915A(b)(1), the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter,* 668 F.3d 1108, 1112 (9th Cir. 2012). Review under 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

In reviewing the complaint under this standard, the court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" Hughes v. Rowe, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure § 1216, at 235-36 (3d ed. 2004)). At a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

Plaintiff sues Steven B. Wolfson and James R. Sweetin, of the Clark County District Attorney's Office. He alleges that on January 16, 2014, he was convicted of kidnapping/sexual assault. He contends that at the time of trial the criminalist failed to perform a genetic marker analysis on his blood type to determine if he was the source of the genetic materials found on the victim, and contends that new methods of DNA testing not available at the time of trial would exonerate him. He claims that the Defendants violated his Fourteenth Amendment right to due process when they denied him access to post-conviction biological evidence to conduct new methods of DNA testing. Specifically, he contends that he filed post-conviction petitions requesting genetic marker analysis of the biological evidence possessed by the State pursuant to Nevada Revised Statute (NRS) 176.0918. On April 11, 2018, he alleges the District Attorney's Office, through Wolfson and Sweetin, responded to the petition that he should be denied access to the biological evidence. Plaintiff asks for an injunction that he be given access to biological evidence so that it may be subject to nuclear DNA testing, mitochondria DNA testing, molecular biology DNA testing and genetic marker analysis, at his own expense.

The Supreme Court held in *Skinner v. Switzer*, 562 U.S. 521 (2011), that a convicted prisoner may bring a post-conviction claim for DNA testing pursuant to section 1983 because "[s]uccess in the suit gains for the prisoner only access to the DNA evidence, which may prove exculpatory, inculpatory, or inconclusive[,]" and will not necessarily imply the invalidity of his conviction. *Skinner*, 562 U.S. at 525.

*Skinner* noted, however, that the Supreme Court's prior decision in *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52 (2009), "severely limits the federal action a state prisoner may bring for DNA testing." *Skinner*, 562 U.S. at 525.

*Osborne* rejected the extension of substantive due process rights to this area.

With respect to procedural due process, the Fourteenth Amendment of the United States Constitution provides: "No State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amend. XIV, § 1. "This Clause imposes procedural limitations on a State's power to take away protected entitlements." *Osborne*, 557 U.S. at 67 (citing *Jones v. Flowers*, 547 U.S. 220, 226-239 (2006)). Osborne argued that access to the State's evidence for DNA testing was a "process" necessary to vindicate his right to prove himself innocent and get out of prison. *Id*. The Court found that a "necessary premise of this argument is that [Osborne] has an entitlement (what our precedents call a 'liberty interest') to prove his innocence even after a fair trial has proved otherwise." *Id*. The Court acknowledged Osborne had "a liberty interest in demonstrating his innocence with new evidence under state law" since Alaska's general postconviction relief statute allowed a prisoner to challenge his conviction if newly discovered evidence established the applicant was innocent. *Id*. at 64, 68. A prisoner making such a claim could conduct discovery, which would extend to a request for DNA evidence for newly available testing. *Id*. at 64. In addition, Alaska courts interpreted the State Constitution as allowing prisoners to pursue such a request. *Id*.

The Supreme Court noted that such a "state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." *Id*. at 68 (citing *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463 (1981); *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974)).

"A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Id*. "Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." *Id* at 69 (citing *Dumschat*, 452 U.S. at 464). The State, however, "has more flexibility in deciding what procedures are needed in the context of postconviction relief." *Id*. "'[W]hen a State chooses to offer help to those seeking relief from convictions,' due process does not 'dictat[e] the exact form such assistance must assume." *Id*. (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 559 (1987)). A convicted prisoner "has only a limited interest in postconviction relief." *Id*.

///

So, in analyzing a claim that a convicted prisoner's due process rights were violated, courts must look at the framework of the State's procedures for post-conviction relief and determine whether they "'offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Id*. (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992); *Herrera v. Collins*, 506 U.S. 390, 407-08 (1993); *Finley*, 481 U.S. at 556). "Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id*.

In *Osborne*, the Supreme Court found there was nothing inadequate about Alaska's procedures for post-conviction relief, both generally, and as applicable to those seeking access to DNA evidence. *Id*. at 70-71.

Here, Plaintiff alleges that he made a request under Nevada's statute regarding post-conviction access to State's evidence for DNA testing—NRS 176.0918. He avers that the District Attorney's Office, through Wolfson and Sweetin, "responded to [the] petition by denying Plaintiff access to biological evidence for DNA testing that would exonerate/exclude the Plaintiff who is actually innocen[t]." (ECF No. 1-1 at 7.)

Plaintiff attaches to his Complaint an exhibit which is his post-conviction petition requesting a genetic marker analysis of evidence within the possession or custody of the State of Nevada. (ECF No. 1-1 at 35-55.) In the petition, he argued that there was a reasonable possibility he would not have been convicted if exculpatory results had been obtained through genetic marker analysis of the evidence. He argued that the criminalist failed to perform DNA testing, genetic marker analysis on the semen/sperm/blood/hair taken from the victim's body and clothing. He noted that genetic evidence analyzed by the criminalist was deemed inconclusive and did not determine whether he was the source of the semen/sperm/blood found on the victim and her clothing.

He has also included as an exhibit the State's response to his petition, filed by Steven Wolfson and James Sweetin of the Clark County District Attorney's Office. (ECF No. 1-1 at 25-27.) The State argued that a criminalist testified at Plaintiff's trial that he was unable to get a DNA

profile from the sexual assault kit because there were insufficient cells on the swabs; therefore, the State argued that it would be futile to analyze Plaintiff's DNA because there was no DNA sample from the sexual assault kit to compare it to.

Nevada enacted legislation providing a convicted felon with a process for requesting genetic marker analysis in NRS 176.0918. The statute allows a convicted felon to file a post-conviction petition requesting genetic marker analysis of evidence within the possession or custody of the State which may contain genetic marker information relating to the investigation or prosecution that resulted in the judgment of conviction. NRS 176.0918(1). The petition must be filed with the clerk of court in the county where the prisoner was convicted on a form prescribed by NDOC, and it must be served by registered mail on the Attorney General and district attorney in the county where the petitioner was convicted. NRS 176.0918(2)(a)-(b). The petition is required to include a declaration that must: (a) identify specific evidence in possession or custody of the State that can be subject to genetic marker analysis; (b) state the rationale for why a reasonable possibility exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through genetic marker analysis of the evidence; (c) state the type of genetic marker analysis sought; (d) state the results of any prior genetic marker analysis performed on the evidence at trial; (e) state that the type of analysis sought was not available at the time of trial, or if available, that the failure to request it was not a result of strategic or tactical decision as part of the representation of the prisoner at trial. NRS 176.0918(3)(a)-(e).

Upon receipt of such a petition, the State court may: (a) enter an order dismissing the petition without a hearing if it determines the petitioner does not meet the requirements of the statute; (b) if indigent, may appoint counsel for the limited purpose of reviewing, supplementing and presenting the petition to the court; or (c) schedule a hearing on the petition, and if it does so, issue an order that the evidence be preserved, and that an inventory be prepared of the relevant evidence. NRS 176.0918(4)(a)-(c).

Plaintiff does not allege, in line with *Osborne*, any facts that the process offered by the State through NRS 176.0918 "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," or "transgresses any recognized

principle of fundamental fairness in operation." Instead, he simply alleges that the denial of his request violates his due process rights.

The Ninth Circuit has not yet specifically addressed Nevada's DNA testing statute. It should be noted, however, that the Ninth Circuit concluded that California's statute for DNA testing which requires the movant to demonstrate the results would raise a "reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if the results of DNA testing had been available at the time of the conviction," did not violate "any recognized principle of fundamental fairness." *Morrison v. Peterson*, 809 F.3d 1059, 1068-69 (9th Cir. 2015) (quoting *Osborne*, 557 U.S. at 69).

The Supreme Court cautioned that "[f]ederal courts should not presume that state criminal procedures will be inadequate to deal with technological change." *Osborne*, 557 U.S. at 74. The court does not do so here, and has no basis to conclude the procedures of the State are inadequate on the basis of the allegations contained within the Complaint. Therefore, Plaintiff fails to state a claim upon which relief may be granted, and his complaint should be dismissed. It is possible Plaintiff could allege facts alleging a viable due process claim, *i.e.*, facts demonstrating that the State's procedures for post-conviction relief offend fundamental principles of justice or transgress recognized principles of fundamental fairness in operation; therefore, the dismissal is with leave to amend.

Finally, the court notes that the Supreme Court has not definitively determined whether there exists a federal constitutional right to be released upon proof of "actual innocence." *See Osborne*, 557 U.S at 71-72. Even such a right existed, the Supreme Court has instructed that it would be brought in habeas and not as a DNA access claim pursuant to section 1983. *Id*. at 72.

### **III. CONCLUSION**

(1) Plaintiff's IFP application (ECF No. 1) is **GRANTED**; however, Plaintiff is required to pay, through NDOC, an initial partial filing fee in the amount of $6, within **THIRTY (30) DAYS** of this Order. Thereafter, whenever his prison account exceeds $10, he shall make monthly payments in the amount of twenty percent of the preceding month's income credited to his account until the full $350 filing fee is paid. This is required even if the action is dismissed, or is otherwise

unsuccessful.  The Clerk shall **SEND** a copy of any this Order to the attention of **Chief of Inmate Services for the Nevada Department of Prisons**, P.O. Box 7011, Carson City, NV 89702.

(2) The Clerk shall **FILE** the Complaint (ECF No. 1-1).

(3) The Complaint is **DISMISSED WITH LEAVE TO AMEND**. Plaintiff has **THIRTY (30) DAYS** from the date of this Order to file an amended complaint correcting the deficiencies noted above. The amended complaint shall be complete in and of itself without reference to any previous complaint. Any allegations, parties or requests for relief from prior pleadings that are not carried forward in the amended complaint will no longer be before the court. Plaintiff shall clearly title the amended pleading as "AMENDED COMPLAINT." If Plaintiff fails to file an amended complaint within the time period prescribed, the action may be dismissed.

DATED: August 7, 2018.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE