# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RICKY NOLAN, | Case No.: 3:18-cv-00338-RCJ-WGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | |
| STEVEN B. WOLFSON, *et al.*, | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

The court previously granted Plaintiff's IFP prisoner IFP application, and dismissed his complaint with leave to amend. Plaintiff filed an amended complaint (ECF No. 9-1) which the court has screened.

To the extent Plaintiff sought leave to amend (ECF No. 9), that motion should be denied as he had already been given leave in the original screening order.

Plaintiff filed an initial motion to exceed the page limitations to add statutes, exhibits and genetic biological evidence. (ECF No. 10.) This motion should be denied as there is no page limit on a complaint, and Plaintiff filed a subsequent motion which the court construes as a request for leave to supplement the amended complaint. (ECF No. 14.) That motion should be granted to the extent the court has considered the supplemental materials submitted in screening the amended complaint.

///

After screening the amended complaint along with the supplemental materials, the court recommends dismissal of this action for failure to state a claim upon which relief may be granted.

## I. BACKGROUND

**A. The original Complaint**

In his original complaint, Plaintiff sued Steven B. Wolfson and James R. Sweetin of the Clark County District Attorney's Office. He alleged that on January 16, 2014, he was convicted of kidnapping and sexual assault. At the time of his trial, the criminalist failed to perform a genetic marker analysis on his blood type to determine if he was the source of the genetic materials found on the victim, and that new methods of DNA testing not available at the time of trial would exonerate him. He claimed that the defendants violated his Fourteenth Amendment right to due process when they denied him access to post-conviction biological evidence to conduct new methods of DNA testing. Specifically, he alleged that he filed post-conviction petitions requesting genetic marker analysis of the biological evidence possessed by the State pursuant to Nevada Revised Statute (NRS) 176.0918. He asserts that on April 11, 2018, the District Attorney's Office, through Wolfson and Sweetin, responded to the petition by stating he should be denied access to biological evidence. He subsequently filed this action, asking for an injunction requiring that he be given access to biological evidence, so it may be subject to nuclear DNA testing, mitochondria DNA testing, molecular biology DNA testing and genetic marker analysis, at his own expense.

**B. Screening of the Original Complaint**

The court issued an order screening the original complaint on August 7, 2018. (ECF No. 3). In doing so, the court pointed out that in *Skinner v. Switzer*, 562 U.S. 521 (2011), the Supreme Court held that a convicted prisoner may bring a post-conviction claim for DNA testing under section 1983 because "[s]uccess in the suit gains for the prisoner only access to the DNA evidence,

which may prove exculpatory, inculpatory, or inconclusive[,]" and will not necessarily imply the invalidity of his conviction. *Skinner*, 562 U.S. at 525. *Skinner* cautioned, however, that the Supreme Court's prior decision in *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52 (2009), "severely limits the federal action a state prisoner may bring for DNA testing." *Skinner*, 562 U.S. at 525. *Osborne* rejected the extension of *substantive* due process to this area.

Insofar as *procedural* due process is concerned, Osborne argued that access to the State's evidence for DNA testing was a "process" necessary to vindicate his right to prove himself innocent and get out of prison. *Osborne*, 557 U.S. at 67. The Supreme Court found that a "necessary premise of this argument is that [Osborne] has an entitlement (what our precedents call a 'liberty interest') to prove his innocence even after a fair trial has proved otherwise." *Id*. The Supreme Court acknowledged that Osborne had "a liberty interest in demonstrating his innocence with new evidence under state law" since Alaska's general postconviction relief statute allowed a prisoner to challenge his conviction if newly discovered evidence established the applicant was innocent. *Id*. at 64, 68. A prisoner making such a claim could conduct discovery, which would extend to a request for DNA evidence for newly available testing. *Id*. at 64. In addition, Alaska courts had interpreted the State Constitution as allowing prisoners to pursue such a request. *Id*.

The Supreme Court noted that such a "state-created right can, in some circumstances, beget yet other rights to procedures essential to realization of the parent right." *Id*. at 68 (citing *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463 (1981); *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974)).

The Court emphasized that "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Id*. "Given a valid conviction, the criminal defendant

has been constitutionally deprived of his liberty." *Id*. at 69 (citation omitted). The State, however, "has more flexibility in deciding what procedures are needed in the context of postconviction relief." *Id*. "'[W]hen a State chooses to offer help to those seeking relief from convictions,' due process does not 'dictat[e] the exact form such assistance must assume." *Id*. (citation omitted). A convicted prisoner "has only a limited interest in postconviction relief." *Id*.

In analyzing a claim that a convicted prisoner's due process rights were violated, courts must look at the framework of the State's procedures for postconviction relief and determine whether they "'offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Id*. (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992); *Herrera v. Collins*, 506 U.S. 390, 407-08 (1993); *Finley*, 481 U.S. at 556). In other words, "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id*.

In *Osborne*, the Supreme Court found there was nothing inadequate about Alaska's procedures for postconviction relief, both generally, and as applicable to those seeking access to DNA evidence. *Id*. at 70-71.

In this case, Plaintiff attached his postconviction petition requesting genetic marker analysis as an exhibit to the original complaint. (ECF No. 1-1 at 35-55.) In the petition, he argued there was a reasonable possibility he would not have been convicted if exculpatory results had been obtained through genetic marker analysis of the evidence. He asserted that the criminalist failed to perform DNA testing, genetic marker analysis on the semen/sperm/blood/hair taken from the victim's body and clothing. He noted that the genetic evidence analyzed by the criminalist was

deemed inconclusive and did not determine whether he was the source of the semen/blood/sperm found on the victim and her clothing.

Plaintiff also included as an exhibit the State's response to his petition, filed by Wolfson and Sweetin. (ECF No. 1-1 at 25-27.) The State argued that a criminalist testified at Plaintiff's criminal trial that he was unable to get a DNA profile from the sexual assault kit because there were insufficient cells on the swabs; therefore, the State asserted that it would be futile to analyze Plaintiff's DNA because there was no DNA sample from the sexual assault kit to compare it to.

In screening the original complaint, the court discussed Nevada's enactment of legislation providing a convicted felon with a process to request genetic marker analysis in NRS 176.0918. The statute allows a convicted felon to file a post-conviction petition requesting genetic marker analysis of evidence within the possession or custody of the State which may contain genetic marker information relating to the investigation or prosecution that resulted in the judgment of conviction. NRS 176.0918(1). The petition must be accompanied by a declaration that: (1) identifies specific evidence in possession or custody of the State that can be subject to genetic marker analysis; (b) states the rationale for why a reasonable possibility exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through genetic marker analysis; (c) states the type of genetic marker analysis sought; (d) states the results of any prior genetic marker analysis performed on the evidence at trial; (e) states that the type of analysis sought was not available at the time of trial or, if available, that the failure to request it was not a result of strategic or tactical decision as part of the representation of the prisoner at trial. NRS 176.0918(3)(a)–(e).

Upon receipt of such a petition, the State court may: (a) enter an order dismissing the petition without a hearing if it determines the petitioner does not meet the requirements of the

statute; (b) if indigent, may appoint counsel for the limited purpose of reviewing, supplementing and presenting the petition to the court; or (c) schedule a hearing on the petition, and if it does so, issue an order that the evidence be preserved, and that an inventory be prepared of the relevant evidence. NRS 176.0918(4)(a)–(c).

In reviewing the original complaint, the court found that Plaintiff had not alleged any facts to suggest that the process offered by Nevada through NRS 176.0918 "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," or that "transgresses any recognized principle of fundamental fairness in operation." The court acknowledged that the Ninth Circuit had not yet specifically addressed Nevada's DNA testing statute, but noted that the Ninth Circuit had concluded California's DNA testing statute did not present any procedural due process concerns. *See Morrison v. Peterson*, 809 F.3d 1059, 1068-69 (9th Cir. 2015) (quoting *Osborne*, 557 U.S. at 69). California's statute required, among other things, that the convicted prisoner to demonstrate that the results would raise "a reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if the results of the DNA testing had been available at the time of the conviction." *Id*.

The court concluded that Plaintiff did not state a colorable procedural due process claim regarding Nevada's DNA testing statute. The court dismissed the complaint, but with leave to amend, as it was possible he could allege facts alleging a viable due process claim, i.e., facts demonstrating that the State's procedures for postconviction relief offend fundamental principles of justice or transgress recognized principles of fairness in operation.

///

///

**C. The Amended Complaint**

Plaintiff filed his amended complaint on August 30, 2018. (ECF No. 9-1.) The court will summarize the allegations and then screen the amended pleading below.

## II. SCREENING

**A. Standard**

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under

1  Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*,

2  232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

3       The court must accept as true the allegations, construe the pleadings in the light most

4  favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395

5  U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent

6  standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)

7  (internal quotation marks and citation omitted).

8       A complaint must contain more than a "formulaic recitation of the elements of a cause of

9  action," it must contain factual allegations sufficient to "raise a right to relief above the speculative

10 level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain

11 something more … than … a statement of facts that merely creates a suspicion [of] a legally

12 cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff

13 should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see*

14 *also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

15      A dismissal should not be without leave to amend unless it is clear from the face of the

16 complaint that the action is frivolous and could not be amended to state a federal claim, or the

17 district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d

18 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

19 **B. Plaintiff's Amended Complaint**

20      The amended complaint names the State of Nevada, District Court Judge Miley A. Stefany,

21 and Clark County District Attorney Steven B. Wolfson as defendants. (ECF No. 9-1 at 1.)

22      Once again, Plaintiff alleges that his constitutional rights were violated when the

23 defendants denied his postconviction petitions requesting genetic marker analysis under

NRS 176.0918. (*Id*. at 3.) He alleges that he was convicted of kidnapping and sexual assault in January of 2004. (*Id*. at 4.) He claims that at his trial, the state presented genetic biological evidence of a sexual assault kit that tested positive for semen/sperm/blood found on the victim and her clothing. At the same time, he asserts that other biological evidence was deemed inconclusive by the criminalist. He avers that the criminalist failed to conduct a genetic marker analysis of Nolan's blood type to determine if he was the source of the genetic materials, and that new methods of DNA testing would exonerate him. (*Id*. at 4.) He later alleges that the criminalist was unable to obtain a DNA profile. (*Id*. at 11.)

He asks this court to enter an injunction ordering that a hearing be conducted on his petition, granting the petition and giving him access to genetic biological evidence to conduct new methods of DNA and other scientific testing that was not available to him at the time of trial. Alternatively, he asks for an injunction requiring the release of the genetic biological evidence for independent testing at his expense. (*Id*. at 5.)

In Count I, he asserts a Fourteenth Amendment due process claim, stating that NRS 176.0918 is inadequate because it denies him a hearing. He alleges that on June 25, 2018, the Nevada district court dismissed his postconviction petition requesting genetic marker analysis under NRS 176.0918 without a hearing even though he claims he met the statute's requirements. He avers that Judge Stefany denied the petition without a hearing, stating that there were not enough cells in the semen/sperm/blood samples to be tested. He argues that Stefany is not a criminalist or forensic specialist and does not have the authority to make such a determination. (*Id*. at 7-8.) Plaintiff claims that where previous testing was deemed inconclusive, this automatically requires that the petition be granted, or that he at least be given a hearing. (*Id*. at 9.)

Plaintiff maintains that he met the requirements of the statute. First, he states that he identified the evidence he believed to be in possession of the State. (*Id*. at 10.) Second, he indicates that he demonstrated a reasonable possibility that he would not have been prosecuted or convicted if the exculpatory results had been obtained through genetic marker analysis. He explains that the Nevada Supreme Court ruled on direct appeal that the victim's trial testimony was inadmissible, and therefore, the jury could only rely on DNA evidence, but the criminalist deemed the testing inconclusive as he could not obtain a DNA profile. (*Id*. at 11.) Third, he identifies the DNA testing sought (nuclear DNA testing, mitochondria DNA testing, molecular biology and genetic marker analysis), and that they were not available at the time of trial, and if they had been performed on Plaintiff's blood, it would have excluded him as the source of the genetic materials. (*Id*. at 11-12.) Fourth, he describes prior analysis performed on the evidence, stating that a "P-30 test" was performed on the semen/sperm/blood samples found on the victim and her clothing, and was deemed inconclusive. (*Id*. at 13.) He again argues that this means his petition should have automatically been granted. (*Id*.) Fifth, he asserts that the type of analysis sought was not available at the time of trial. (*Id*. at 14-18.)

He alleges that in light of his meeting the statutory requirements, the failure to give him a hearing "offends the principle of justice" so as to violate procedural due process guarantees. (*Id*. at 19-21.)

Plaintiff asserts the same claim and repeats many of the same allegations in Count II. (*Id*. at 23-24.) He reiterates his argument that the fact that there were not enough cells to test is not a proper basis for denying the petition without a hearing. Instead, he argues that inconclusive results require granting the petition. (*Id*. at 24-25.)

1    Plaintiff subsequently filed a request to exceed the page limits and include additional

2  evidence as exhibits to his amended complaint, which the court recommends granting. (ECF No.

3  14.) He provides an excerpt of the Nevada Supreme Court's decision finding that the State and

4  district court failed to follow procedural safeguards of NRS 48.039 regarding posthypnotic

5  testimony, but that this was harmless error because there was other evidence supporting the jury's

6  guilty verdict. (ECF No. 14 at 31.) Next, he includes a motion made to the State court, arguing that

7  his postconviction petitions be granted because of the Nevada Supreme Court's conclusion

8  regarding the posthypnotic testimony. (*Id*. at 32.) This is followed by what appears to be the cover

9  page and signature page of the State's response to his motion, which the State construed as a

10  request for reconsideration. (*Id*. at 33-34.)

11    He then provides testimony from criminalist Thomas Wahl from January 13, 2004.  (*Id*. at

12  36-43.) This included testimony that there are situations where you may recover a sample but there

13  is not enough DNA in it to perform a DNA profile, i.e., when there are an insufficient number of

14  cells present on the sample. (*Id*. at 37-38.) He then described his DNA analysis procedure for the

15  case: he would first conduct a test for acid phosphatase which is "highly indicative" of the presence

16  of semen; next, for those that were positive, he would conduct a P30 test that looks for a human

17  specific protein found in the fluid portion of human semen to prove the sample is indeed semen;

18  then, for those that were positive on the P30 test, he would perform a microscopic analysis to

19  determine if there were any sperm cells present, and if there were sufficient sperm present to

20  proceed with DNA testing. (*Id*. at 40.) He proceeded in this fashion with respect to vaginal, rectal,

21  oral and lip swabs. (*Id*.) There were no sperm cells on the vaginal, rectal or oral swabs. (*Id*.) On

22  the lip swab, he detected three sperm; but this was insufficient for DNA testing, so no DNA testing

23  was performed. (*Id*.)

1    Wahl also conducted testing of a specimen cup (a fibrous clot from the victim), but never

2  got an acid phosphatase positive, which would indicate the presence of semen. (*Id*. at 40-41.) There

3  was also a swab from a retaining wall where the victim had reportedly sat, but no semen was

4  detected in that sample either. (*Id*. at 41.) Nor did he detect semen on the articles of clothing that

5  the victim had been wearing. (*Id*.) He was later asked to test a swabbing of apparent blood from a

6  bathroom floor as well as a cloth rag. (*Id*. at 42.) He was able to identify human blood as to the

7  floor sample, but not with respect to the cloth rag, but there were only trace amounts of human

8  DNA. (*Id*.) He completed a DNA profile from a buccal swab taken from Plaintiff to use as a known

9  reference standard DNA profile. (*Id*.) He performed DNA profiling on the blood sample from the

10  floor, which resulted in very limited DNA typing results, and Plaintiff was excluded as the source

11  of that blood. (*Id*.)

12    Finally, Plaintiff provided various other exhibits related to his criminal trial and

13  postconviction petitions: a list of exhibits at the criminal trial (*id*. at 45); the application and search

14  warrant for his buccal swab (*id*. at 46-47); an excerpt from the State's response to his petition

15  requesting genetic marker analysis (which argued testing would be futile because there were

16  insufficient cells) (*id*. at 49-50); handwritten language of NRS 176.0918-176.09183 (*id*. at 52-55);

17  hist postconviction petition for genetic marker analysis (*id*. at 57-61); an index exhibits from the

18  criminal trial (*id*. at 63-64); additional transcript of testimony from Criminalist Wahl (*id*. at 66-70)

19  (this includes testimony that there were insufficient cells on the swabs to get a DNA result (*id*. at

20  68)); another postconviction petition requesting genetic marker analysis (*id*. at 72-76); and a

21  request for no prosecution by a victim for a charge of sexual assault (*id*. at 78); and Plaintiff's

22  affidavits that he had no sexual contact with the victims (*id*. at 80-81).

23

**C. Analysis**

Plaintiff's amended complaint still fails to state a claim upon which relief may be granted. His allegations do not plausibly suggest that Nevada's postconviction relief procedures for obtaining DNA testing are inadequate, either generally, or as applicable to Plaintiff. To reiterate, a federal court "may upset a State's postconviction relief procedures *only* if they are fundamentally inadequate to vindicate the substantive rights provided." *Osborne*, 557 U.S. at 69 (emphasis added).

Plaintiff argues that NRS 176.0918 is inadequate because he was not given a hearing when the DNA results were inconclusive. The statute lists various requirements the petition must meet, and then states that the court can enter an order dismissing the petition without a hearing if it determines that the petitioner does not meet the requirements. Plaintiff maintains that he met the statutory requirements and should have been given a hearing, and also alleges that his petition should have been granted, or he should have at least been given a hearing because the prior DNA test results were inconclusive.

The district court denied the petition without a hearing on the basis that the criminalist testified at Plaintiff's criminal trial that there were insufficient cells "and therefore no D.N.A. could be obtained" so there were no grounds for bringing the petition. (ECF No. 9-1 at 35.)

Plaintiff's allegations do not establish that Nevada's postconviction procedures concerning DNA testing are inadequate, but instead demonstrate his disagreement with the Nevada district court's determination that he did not meet the statutory requirements. The statute requires the petitioner to provide a rationale for why a reasonable basis exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through a genetic marker analysis. NRS 176.0918(3)(b). It is true that NRS 176.09183 states that the court shall order a

genetic marker analysis if the result of previous genetic marker analysis was inconclusive, NRS 176.09183(2)(a); however, NRS 176.09183 also still provides that the court shall enter an order dismissing the petition if the requirements for ordering the analysis under NRS 176.0918 and 176.09187 are not satisfied. NRS 176.09183(5)(a).

The Nevada district court apparently found Plaintiff did not set forth a reasonable basis that he would not have been convicted if exculpatory results had been obtained through genetic marker analysis because there was testimony that there were insufficient cells to obtain a DNA profile from the biological samples collected. In other words, any attempt to conduct further DNA testing would be futile. Insofar as Plaintiff argues his petition should have been granted because the results were inconclusive under NRS 176.09183(2)(a), the criminalist's testimony was that he could not obtain a DNA profile from the samples collected. (*See* ECF No. 9-1 at 40-43, 66, 67, 68.) In any event, Plaintiff had a remedy under State law to address dismissal of his petition if he deemed the dismissal to be in error: an appeal to the appellate court within 30 days after the notice of the entry of the order. NRS 176.09183(6).

These are exactly the type of decisions that are within the realm of the State court. The process itself is not inadequate; Plaintiff simply disagrees with the outcome, and that is not a basis for finding a federal constitutional violation.

For these reasons, it is recommended that Plaintiff's action be dismissed. Plaintiff has already been given one opportunity to amend to state a claim; therefore, the dismissal should be with prejudice. In light of the conclusion that Plaintiff fails to state a claim against any defendant, the court will not reach the issue of immunity that may pertain to the State, Judge Stefany and District Attorney Wolfson.

### III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order:

(1) **DENYING** the motion for leave to amend (ECF No. 9) as **MOOT**;

(2) **DENYING** the motion to exceed page limits (ECF No. 10) as **MOOT** because while a complaint should contain a "short and plain statement of the claim showing that the pleader is entitled to relief" there are no set page limits for a complaint (as opposed to page limits for motions and other filings set forth in Local Rule 7-3);

(3) **GRANTING** the subsequent motion to exceed page limitations to add exhibits and evidence (ECF No. 14), which the court construes as a request to supplement the amended complaint; and

(4) **DISMISSING** the action with prejudice.

The Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: November 13, 2018.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE